Slip Op. 21-45

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>       v.<br><br>NYWL ENTERPRISES INC.,<br><br>            Defendant. | Before: Mark A. Barnett, Chief Judge<br>Court No. 16-00257 |

### OPINION

[Granting Plaintiff's motion for the entry of default judgment.]

Dated: April 16, 2021

Jason M. Kenner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY for Plaintiff United States.  With him on the brief were Brian Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Steven J. Holtkamp, Staff Attorney, Office of Chief Counsel, U.S. Customs and Border Protection, of Chicago, IL.

Barnett, Chief Judge:  This matter is before the court following Plaintiff United States' ("Plaintiff" or "the Government") second motion for the entry of default judgment pursuant to U.S. Court of International Trade ("USCIT" or "CIT") Rule 55(b).  See Pl.'s [Second] Mot. for Entry of Default J. ("Pl.'s Second Mot."), ECF No. 43.  Plaintiff alleges that Defendant NYWL Enterprises Inc. ("NYWL") fraudulently misclassified 107 entries of imported Siamese coaxial cable ("coaxial cable") in violation of section 592 of the

Court No. 16-00257                                                      Page 2

Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2012).[1]  *See* Am. Compl. ¶¶ 1–7, 24,

36–40, Ex. A, ECF No. 39 (listing the 107 subject entries).  The Government seeks

$379,665.83 in unpaid duties, a civil penalty in the amount of $3,760,000.00, post-

judgment interest, and costs.  *See id.* ¶¶ 36–40, 51–52; *id.* p. 8 (Wherefore clause); Pl.'s

Second Mot. at 17–18.

     For the following reasons, the court grants Plaintiff's motion and will enter

judgment for the requested amounts.

## BACKGROUND

     The following facts are taken from the Government's Amended Complaint.

NYWL is a New York corporation.  Am. Compl. ¶ 4.  Mr. Dian He was NYWL's Chief

Executive Officer during the events relevant to this action.  *Id*. ¶ 4.[2]  From March 4,

2011, to February 16, 2012, NYWL made 107 entries of merchandise consisting of

coaxial cable through the Port of Chicago, Illinois.  *Id*. ¶ 5, Ex. A.  "The coaxial cable

was imported on spools that were labeled 'Applications, General Use, Surveillance and

CCTV'" and packed in boxes "labeled 'CCTV & CATV Cable.'"  *Id.* ¶ 6.[3]  "[B]oth the

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, 2012 edition, which is the same in all relevant respects to the
2006 edition in effect when most of the subject entries were made.

[2] Plaintiff initially named Mr. He as a defendant in this case.  *See generally* Summons,
ECF No. 1; Compl., ECF No. 2.  Plaintiff dismissed Mr. He as a defendant in the action
after it was unable to serve process upon him in the United States.  *See, e.g.*, [Tenth]
Mot. to Extend Time for Domestic Service Pursuant to USCIT Rule 4(l), ECF No. 26;
Notice of Dismissal as Against Dian He ("He Dismissal"), ECF No. 29.

[3] "CCTV" refers to "closed-circuit television."  *See* Am. Compl. ¶ 24.  The Amended
Complaint does not define "CATV."

spools and boxes showed that the cable had been produced for . . . a known user of CCTV and CATV cable."  *Id.*

Entry documentation listed the cable as either: (1) cored wire of base metal for electric arc welding pursuant to subheading 8311.20.00 of the Harmonized Tariff System of the United States ("HTSUS"), dutiable at zero percent; (2) winding wire pursuant to 8544.11.0050, HTSUS, dutiable at the rate of 3.5 percent *ad valorem*; or (3) insulated wire of a kind used for telecommunications pursuant to 8544.49.10, HTSUS, dutiable at zero percent.  *Id.* ¶ 24.  The coaxial cable in question was properly classifiable under subheading 8544.20.00, HTSUS, as coaxial cable and other coaxial electric conductors, dutiable at the rate of 5.3 percent *ad valorem*.  *Id.* ¶¶ 7, 24.

Prior to importing the coaxial cable at issue in this case, "NYWL's sole corporate executive, Dian He was aware" of the correct classification of the merchandise "based upon his experience with [two] other corporations for which he served as sole corporate officer."  *Id.* ¶ 7; *see also id.* ¶ 24 (alleging that NYWL "knew that the merchandise consisted of Siamese coaxial cable[] that [NYWL's customer] was purchasing . . . for use in closed-circuit television systems").

"Between 2003 and June 28, 2006, Dian He made 203 entries of coaxial cable into various ports through [Dony Industrial Corporation ("Dony")]."  *Id.* ¶ 9.  "All 203 of the Dony entries . . . were made under subheading 8311.20.00, HTSUS, as cored wire of base metal for electric arc welding, duty-free."  *Id.* ¶ 10.  On June 28, 2006, U.S. Customs and Border Protection ("CBP" or "Customs") "examined one of the Dony entries at the Port of Pittsburg[h] and discovered that the entry included Siamese

[coaxial] cable and not arc welding wire." *Id.* ¶ 11.  When CBP "informed Dony's broker that the merchandise in the entry was improperly classified," *id.* ¶ 12, "Dony ceased importing through the Port of Pittsburg[h]," *id.* ¶ 13.  Thereafter, "Dony made eight additional entries through the Port of Chicago and the Port of Everglades/Fort Lauderdale" under either subheading 8544.49.00, HTSUS, or subheading 8311.20.00, HTSUS, both of which incur zero duties.  *Id.* ¶¶ 14–15.  Dony made the last of these entries on August 24, 2006.  *Id.* ¶ 14.

On August 29, 2006, "Dian He began entering coaxial cable through Win Long Enterprises Inc. (["]Win Long["]) utilizing the same customs broker as used with Dony." *Id.* ¶ 16.  "Dian He was [Win Long's] sole corporate officer."  *Id.* ¶ 17.  From August 29, 2006, to February 25, 2011, "Win Long made 341 entries of coaxial cable."  *Id.* ¶ 18. Win Long classified each entry "as arc welding wire, duty free."  *Id.* ¶ 19.  Several of the entries contained a commercial invoice stating that "the correct classification was under subheading 8544.40.00, HTSUS, as coaxial cable."  *Id.* ¶ 20.  "In 18 of the Win Long entries, the correct classification for [coaxial] cable was crossed-out and the incorrect classification for arc welding wire was handwritten in."  *Id.* ¶ 21.  Following CBP's "examination of a Win Long entry on February 25, 2011, . . . Win Long ceased importing coaxial cable."  *Id.* ¶ 22.  Thereafter, on March 4, 2011, Mr. He began entering coaxial cable "through NYWL utilizing the same customs broker as used to make the Dony and Win Long entries."  *Id.* ¶ 23.

On December 5, 2011, CBP identified an NYWL entry for "a routine inquiry."  *Id.* ¶ 25.  On December 8, 2011, "in response to a request from CBP, NYWL's customs

broker provided an entry with attached commercial invoice describing the merchandise as CCTV cable and not as cored wire of base metal for electric arc welding." *Id*. This information resulted in CBP's discovery of NYWL's classification violations. *See id.*

On February 22 and 23 of 2016, "CBP issued pre-penalty notices to NYWL and Mr. He." *Id.* ¶ 30. These notices "identified a total loss of revenue of $470,008.75 and an actual loss of revenue of $379,665.83 relating to the misclassification of the [coaxial] cable." *Id.* The notices further "proposed a culpability level of fraud and a corresponding penalty, jointly and severally against NYWL and Mr. He in the amount of $3,760,070.00[,] equal to eight times the loss of revenue." *Id.* "Neither NYWL nor Mr. He responded to the pre-penalty notice[s]." *Id.* ¶ 31. "On March 4, 2016, CBP issued a duty demand in the amount of $379,665.83 and a penalty notice in the amount of $3,760,070.00 to NYWL and Mr. He jointly and severally" for fraudulent misclassification. *Id.* ¶ 32. Again, "[n]either NYWL nor Mr. He responded." *Id*. ¶ 33. The duties and penalty remain unpaid. *Id.* ¶ 35.[4]

On December 7, 2016, Plaintiff timely[5] commenced this action through the concurrent filing of the Summons and Complaint. *See* Summons; Compl. The

---

[4] The total loss of revenue associated with NYWL's entries is $470,008.75, which consists of "an actual loss of revenue of $379,665.83 and a potential loss of revenue of $90,342.92." Pl.'s Second Mot. at 8. "Potential lost revenue refers to unpaid duties discovered prior to liquidation while actual lost revenue refers to unpaid duties discovered after liquidation." *Id.* at 8 n.3. NYWL's surety paid the bond amount of $100,000, which covered the potential lost revenue plus $9,657.08 in interest. *Id.* at 8.

[5] The statute of limitations for an action based on a fraudulent violation of 19 U.S.C. § 1592 is five years from "the date of discovery of fraud." 19 U.S.C. § 1621(1). The Government alleges that discovery of the alleged fraud occurred on December 8, 2011, Am. Compl. ¶ 25, rendering this action timely, *see* Summons.

Government first effected service upon NYWL through the New York Secretary of State on March 7, 2017.  Certificate of Service, ECF No. 4.  On June 23, 2020, the Government obtained an entry of default against NYWL for its failure to respond to the original Complaint.  Entry of Default, ECF No. 32.  On October 30, 2020, the court denied the Government's first motion for the entry of default judgment based on the insufficiency of the factual allegations concerning NYWL's fraudulent misclassification. *See generally United States v. NYWL Enters. Inc.* ("*NYWL I*"), 44 CIT ___, 476 F. Supp. 3d 1394 (2020).

On December 29, 2020, the Government filed its Amended Complaint.  That day, the Government effected service upon NYWL through the New York Secretary of State. Aff. of Service, ECF No. 40.  On January 20, 2021, the Government obtained an entry of default against NYWL for its failure to respond to the Amended Complaint.  Entry of Default, ECF No. 42.  On February 19, 2021, the Government filed the pending motion for the entry of default judgment.  *See* Pl.'s Second Mot.  Appended to the motion are several declarations and supporting exhibits.  *See id.*, Ex. 2 (Decl. of Int'l Trade Analyst Jeffrey Kiekenbush) ("Kiekenbush Decl."), ECF No. 43-2; *id.*, Ex. 3 (Decl. of Import Specialist Janice Vercillo) ("Vercillo Decl."), ECF No. 43-3; *id.*, Ex. 4 (Decl. of CBP Officer John Brothers, Retired) ("Brothers Decl."), ECF No. 43-4.[6]

---

[6] The Government filed both public and confidential exhibits to the Declarations. *See* ECF Nos. 43-5 through 43-26 (public); ECF Nos. 44 through 44-13 (confidential).

### JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1582.  A case arising pursuant to 28 U.S.C. § 1582 is reviewed *de novo*.  28 U.S.C. § 2640(a)(6).

USCIT Rule 55 "provides a two-step process for obtaining judgment when a party fails to plead or otherwise defend—(1) entry of default followed by (2) entry of a default judgment."  *United States v. Six Star Wholesale, Inc.*, 43 CIT ___, ___, 359 F. Supp. 3d 1314, 1318 (2019); *see also* USCIT Rule 55(a)–(b).  A defendant in default pursuant to USCIT Rule 55(a) "admits all well-[pleaded] factual allegations contained in the complaint."  *Six Star*, 359 F. Supp. 3d at 1318.  Default does not, however, serve as an admission of legal claims or damages.  *See, e.g.*, *United States v. Puentes*, 41 CIT ___, ___, 219 F. Supp. 3d 1352, 1358 (2017).  Thus, before entering judgment by default, the court must ensure that the factual allegations in the Government's Amended Complaint "establish [NYWL's] liability as a matter of law," *Six Star*, 359 F. Supp. 3d at 1319, and "that there is an adequate evidentiary basis for any relief awarded," *Puentes*, 219 F. Supp. 3d at 1358 (citation omitted).

The Government seeks judgment by default in connection with its fraudulent importation claim.  Pl.'s Second Mot. at 17–18.  The court's review of Plaintiff's Amended Complaint therefore implicates USCIT Rule 9(b), which requires a party alleging fraud to state the circumstances constituting the fraud with particularity, while intent or knowledge "may be alleged generally."  USCIT Rule 9(b); *see also NYWL I*, 476 F. Supp. 3d at 1398 n.3 (finding that USCIT Rule 9(b) applies to the court's review of a complaint alleging fraud for purposes of deciding whether to enter default

judgment).  These circumstances include "the who, what, when, where, and how of the alleged fraud."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (citation omitted) (examining the analogous Federal Rule of Civil Procedure ("FRCP") 9(b)); *see also United States v. Univar USA, Inc*., 40 CIT ___, ___, 195 F. Supp. 3d 1312, 1317 (2016) (noting that the court may refer to cases interpreting the analogous FRCP for guidance).

DISCUSSION

Section 1592 bars the fraudulent entry or introduction of merchandise into the commerce of the United States by means of a materially false statement or material omission.  *See* 19 U.S.C. § 1592(a)(1)(A).  A statement is considered material if it has the tendency to influence agency action including determination of the classification of merchandise.  19 C.F.R. pt. 171, app. B(B).  The asserted classification of merchandise in entry paperwork "constitutes a material statement under the statute."  *United States v. Optrex Am., Inc.*, 32 CIT 620, 631, 560 F. Supp. 2d 1326, 1336 (2008).  A violation is fraudulent when the "material false statement . . . was committed . . . knowingly, i.e., was done voluntarily and intentionally."  19 C.F.R. pt. 171, app. B(C)(3).  Section 1592 further requires CBP to issue a pre-penalty notice and penalty notice before commencing any enforcement action.  19 U.S.C. § 1592(b); *see also United States v. Int'l Trading Servs., LLC*, 40 CIT ___, ___, 190 F. Supp. 3d 1263, 1269–70 (2016) (discussing the procedures required for CBP to perfect its penalty claim at the administrative level).  A fraudulent violation of section 1592(a)(1)(A) "is punishable by a

civil penalty in an amount not to exceed the domestic value of the merchandise."  19

U.S.C. § 1592(c)(1).  The court will address liability before turning to damages.

### I.      Liability

Plaintiff's factual allegations and the information contained in Exhibit A to the

Amended Complaint adequately specify both the falsity and the materiality of each of

NYWL's alleged misclassifications.  Plaintiff alleges that, from March 4, 2011, through

February 16, 2012, NYWL made 107 entries of coaxial cable through the Port of

Chicago, Illinois, that were accompanied by entry documentation reflecting incorrect

HTSUS tariff provisions.  Am. Compl. ¶¶ 5–6, 24, Ex. A.  Exhibit A, attached to the

Amended Complaint and incorporated by reference, details, for each of the 107 entries

at issue, the entry number and date, the classification declared by NYWL, the correct

classification, and the code associated with the port of entry.  *See id.* ¶ 5, Ex. A; *cf.*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts

to consider "documents incorporated into the complaint by reference" when considering

whether the complaint contains sufficient factual allegations to state a claim for relief).

Plaintiff further specifies the difference between the duty rate reflected in each incorrect

HTSUS provision and the higher duty rate provided for by the correct HTSUS provision,

which resulted in the underassessment of duties by CBP.  Am. Compl. ¶ 24.  Plaintiff

also adequately alleges the steps CBP took to perfect its claim at the administrative

level.  *Id.* ¶¶ 30–34.

With respect to culpability, to obtain a penalty based on fraud, Plaintiff must

"include sufficient allegations of underlying facts from which a court may reasonably

infer" NYWL's knowledge of the falsity of the declared classification.  *Exergen*, 575 F.3d

at 1328.  Plaintiff's Amended Complaint satisfies that requirement.

Plaintiff alleges that NYWL knew that the merchandise consisted of coaxial cable

that its customer purchased for use in closed-circuit television systems and knew the

correct classification of the merchandise.  Am. Compl. ¶ 24.  Plaintiff demonstrates

NYWL's knowledge through allegations concerning the importing history of NYWL's sole

corporate executive, Mr. He, in connection with his previous companies.  *Id.* ¶¶ 7–22.[7]

Specifically, the Government alleges that Dony made 203 entries of coaxial cable under

subheading 8311.20.00, HTSUS, applicable to arc welding wire.  *Id.* ¶¶ 9–10.  When

CBP informed Dony's broker about the misclassification of entries entering through the

Port of Pittsburgh, Dony ceased make entries through that port and instead made

several entries through other ports using incorrect classifications.  *Id*. ¶¶ 13–15.  Soon

after Dony ceased importing, Win Long made 341 entries of coaxial cable incorrectly

classified as arc welding wire notwithstanding that several of the entries contained

invoices stating the correct classification, which, in some instances, had been crossed

out and replaced with the incorrect classification.  *Id.* ¶¶ 18–21.  Following an

examination of a Win Long entry by CBP, NYWL began entering the subject coaxial

cable with assistance from the same customs broker Dony and Win Long used.  *Id.*

¶¶ 22–24.  The Government's allegations are sufficient for the court to infer that NYWL

---

[7] Plaintiff also alleges that the spools of coaxial cable and boxes in which they were
packed indicated the nature of the merchandise, Am. Compl. ¶ 6, and that the
merchandise was to be used in closed-circuit television systems, *id.* ¶¶ 6, 24.  These
allegations further support an inference of knowing misclassification by NYWL.

knew the correct classification for its entries of coaxial cable prior to its first entry yet

knowingly misclassified its entries under the same incorrect tariff provisions that Dony

and Win Long had used.

Accordingly, the Government has alleged sufficient facts establishing that NYWL

is liable for fraudulent violations of 19 U.S.C. § 1592(a) in connection with the 107

subject entries.

**II.    Damages**

The Government seeks $379,665.83 in unpaid duties.  Pl.'s Second Mot. at 17;

*see also* Kiekenbush Decl. ¶ 23 (calculating the loss of revenue).[8]  That figure was

calculated "by multiplying the declared value by the required duty rate under the correct

[HTSUS] classification and subtracting any duty that had been paid."  Kiekenbush Decl.

¶ 23; *see also id.*, Ex. F, ECF No. 44-6.[9]  Pursuant to USCIT Rule 55(b), "[w]hen the

plaintiff's claim is for a sum certain . . . , the court – on the plaintiff's request with an

affidavit showing the amount due – must enter judgment for that amount and costs

against a defendant who has been defaulted for not appearing."  Because the

Government's request for unpaid duties is for a sum certain that is supported by the

---

[8] NYWL's surety paid the Government $100,000, the limit of NYWL's bond.  Pl.'s Second Mot. at 8.  That amount covered potential lost revenue in the amount of $90,342.92 plus interest.  *Id.*; *see also* Vercillo Decl. ¶ 2.

[9] In its motion, the Government reports the amount of lost revenue variously as $379,665.83, Pl.'s Second Mot. at 8; $379,665,83, *id.* at 17; and $379,656.83, *id.* at 18.  The court understands the latter variations to be typographical errors.  The court has verified that the calculations contained in Exhibit F to the Kiekenbush Declaration represent the correct summation of actual lost revenue.

Kiekenbush Declaration, the court will enter judgment for the Government in the amount of $379,665.83 in unpaid duties.

The Government requests a monetary penalty in the amount of $3,760,070.00. *See* Pl.'s Second Mot. at 17.  The penalty determination is committed to the court's discretion, subject to the statutory maximum amount equaling the domestic value of the merchandise.  19 U.S.C. § 1592(c)(1), (e)(1); *United States v. Nat'l Semiconductor Corp.*, 547 F.3d 1364, 1367–68 (Fed. Cir. 2008) (citation omitted).  In this case, the requested penalty equals eight times the total loss of revenue, $470,008.75, and is less than the domestic value of the merchandise, $9,418,016.12.  Vercillo Decl. ¶ 5; *see also* Kiekenbush Decl., Ex. F.  The requested penalty is therefore consistent with 19 U.S.C. § 1592(c)(1), but the inquiry does not end there.

In determining an appropriate penalty, the court "determines the appropriate amount in light of the totality of the evidence supporting a higher or lower penalty."  *Six Star*, 359 F. Supp. 3d at 1320 (quoting *United States v. Sterling Footwear, Inc.*, 41 CIT ___, ___, 279 F. Supp. 3d 1113, 1144 (2017)).  In so doing, "[t]he court ordinarily considers fourteen non-exclusive factors."  *United States v. Deladiep, Inc.*, 41 CIT ___, ___, 255 F. Supp. 3d 1326, 1341 (2017) (citing *United States v. Complex Mach. Works Co.*, 23 CIT 942, 949, 83 F. Supp. 2d 1307, 1314 (1999)).[10]  In the default judgment

---

[10] Those factors are:
(1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay;

context, however, a defendant's failure to answer the complaint or otherwise participate

in the action leaves the court with an incomplete record upon which to determine the

appropriate penalty.

Under these circumstances, the court typically weighs any "mitigating or

aggravating considerations" evident in the limited record. *United States v. Horizon*

*Prods. Int'l, Inc.*, 41 CIT ___, ___, 229 F. Supp. 3d 1370, 1379 (2017) (collecting

cases); *see also Deladiep*, 255 F. Supp. 3d at 1341–42. *But see United States v.*

*NYCC 1959 Inc.*, 40 CIT ___, ___, 182 F. Supp. 3d 1346, 1348–49 (2016) (verifying

that the requested penalty was within the statutory limit and noting the absence of

arguments or factual allegations supporting a lesser penalty). Those considerations

may, to the extent permitted by the record, draw upon the *Complex Machine Works*

factors. *See, e.g.*, *United States v. Cruzin Cooler, LLC*, 44 CIT ___, ___, 459 F. Supp.

3d 1366, 1380–82 (2020) (considering the defendant's character; seriousness of the

_____

(8) the appropriateness of the size of the penalty to the defendant's
business and the effect of a penalty on the defendant's ability to continue
doing business; (9) that the penalty not otherwise be shocking to the
conscience of the [c]ourt; (10) the economic benefit gained by the
defendant through the violation; (11) the degree of harm to the public; (12)
the value of vindicating the agency authority; (13) whether the party
sought to be protected by the statute had been adequately compensated
for the harm; and (14) such other matters as justice may require.

*Complex Mach. Works Co.*, 23 CIT at 949–50, 83 F.Supp.2d at 1315. The factors
reflect consideration of "the defendant's character, the seriousness of the offense, the
practical effect of the imposition of the penalty, the benefit gained by the defendant, and
public policy concerns." *Deladiep*, 255 F. Supp. 3d at 1341 n.29 (citing *Complex Mach.*
*Works Co.*, 23 CIT at 949–50, 83 F. Supp. 2d at 1316); *see also United States v. Int'l*
*Trading Servs., LLC*, 41 CIT ___, ___, 222 F. Supp. 3d 1325, 1334 (2017)
(summarizing the factors).

offense; practical effect of the penalty; and public policy concerns); *cf. Int'l Trading Servs.*, 222 F. Supp. 3d at 1334–36.  The court addresses the existence of any mitigating or aggravating factors with this guidance in mind.

The record before the court merits the imposition of a substantial penalty.[11] Plaintiff's factual allegations, accepted as true, and supporting exhibits indicate that NYWL was established in order to avoid the statutory responsibilities attendant to an importer of record and the payment of lawful duties on the subject entries.  Am. Compl. ¶¶ 7–23; Kiekenbush Decl. ¶¶ 10–22; *see also* 19 U.S.C. §§ 1484, 1485.  This favors a heightened penalty.  *Cf. Cruzin Cooler*, 459 F. Supp. 3d at 1381 (considering the creation of a company in order to avoid statutory obligations to constitute an aggravating factor).  Additionally, NYWL's misclassifications disregarded several publicly available Customs rulings, *see* Kiekenbush Decl. ¶ 3, and information previously provided by CBP to Dony's broker concerning the correct classification of coaxial cable, *see id.* ¶¶ 12–13; Brothers Decl. ¶ 3.  NYWL also disregarded descriptions of the subject merchandise as "CCTV & CATV Cable," "Coax," and "Coaxial Cable" listed in the specifications and on invoices, spools, and boxes accompanying the merchandise.  Kiekenbush Decl. ¶¶ 4–5; *see also id.*, Ex. A, ECF No. 44-3 (NYWL's response to CBP's request for information and attached specifications and sample invoice); *id.*, Ex. B, ECF No. 44-4 (copy of NYWL's Entry U79-0081147-3);

---

[11] Rule 55(b) permits the court to look beyond the complaint in order to determine an appropriate penalty.  *See, e.g., United States v. Freight Forwarder Int'l, Inc.*, 39 CIT ___, ___, 44 F. Supp. 3d 1359, 1362 (2015) (further noting that USCIT Rule 55(b) permits, but does not require, the court to hold a hearing on this issue).

*id.*, Ex. C, ECF No. 43-10 (photos of labeling on spools and boxes entered as Entry

U79-0081147-3 ).  The record lacks any mitigating evidence suggesting "a reason for

[NYWL's] actions other than an unlawful effort to obtain a [lower] rate for its entries."

*Horizon Prods.*, 229 F. Supp. 3d at 1380.

      Further, NYWL's violations—encompassing 107 entries over almost one year—

represent "a pattern of disregard for the customs laws of the United States," rather than

"isolated occurrences."  *Id.* at 1380 (citing *United States v. New–Form Mfg. Co.*, 27 CIT

905, 921–22, 277 F. Supp. 2d 1313, 1328–29 (2003)).  The misclassifications accrued

to NYWL a substantial economic benefit totaling $470,008.75 in unpaid duties on

several millions of dollars' worth of goods.  Kiekenbush Decl. ¶ 23, Ex. F.  The

seriousness of NYWL's offenses indicate the need for a heightened penalty.  *See*

*Complex Mach. Works Co.*, 23 CIT at 953, 83 F. Supp. 2d at 1317 (noting that the

"[g]ravity of the violation may be evaluated in terms of the frequency of the violations,

the amount of the duties at issue, and the domestic value of the imported goods").

      Given NYWL's failure to defend, the court is unable to assess the practical effect

of any penalty on NYWL.  *Cf.* 19 C.F.R. pt. 171, app. B(G)(6) (a party asserting an

inability to pay must present documentary evidence supporting the assertion).

However, given the nature and seriousness of the violation, the requested penalty does

not shock the court's conscience.  *See Complex Mach. Works Co.*, 23 CIT at 954, 83 F.

Supp. 2d at 1318; *cf. Cruzin Cooler*, 459 F. Supp. 3d at 1381 (a penalty amount within

"the statutory penalty range is not shocking to the conscience of the court given the

blatant and intentional disregard for and violation of U.S. law").

Lastly, public policy concerns favor a heightened penalty.  The public interest is served by "the truthful and accurate submission of documentation to Customs and the full and timely payment of the duties required on imported merchandise."  *Horizon Prods. Int'l*, 229 F. Supp. 3d at 1381 (quoting *Complex Mach. Works Co.*, 23 CIT at 952, 83 F. Supp. 2d at 1317).  "[T]he amount of harm suffered by the Government is not limited to the dollar value of duties lost."  *Complex Mach. Works Co.*, 23 CIT at 955, 83 F. Supp. 2d at 1319 (citing *United States v. Snuggles, Inc.*, 20 CIT 1057, 1068, 937 F. Supp. 923, 927 (1996)).  In addition to the duties that remain unpaid, the Government has expended resources investigating the misclassified entries and pursuing an enforcement action against NYWL.  *See generally* Kiekenbush Decl. (discussing CBP's investigative efforts); Vercillo Decl. (discussing administrative enforcement actions).  Absent mitigating circumstances, such as a voluntary disclosure of the violations, this factor also favors a heightened penalty.  *Cf. United States v. Nat'l Semiconductor Corp.*, 30 CIT 769, 772 (2006) (finding that a voluntary disclosure would support penalty mitigation in order to encourage such behavior).

In view of the foregoing, the Government is entitled to a substantial penalty within the statutory range.  The Government's requested penalty in the amount of $3,760,070.00 is significantly less than the $9,418,016.72 amount allowed by section 1592(c)(1).  The requested penalty is therefore reasonable and merited in this case.  Thus, the court will enter judgment for the Government for a civil penalty in the amount of $3,760,070.00.

Court No. 16-00257                                                                Page 17

      The Government also seeks post-judgment interest and costs.  Pl.'s Second Mot. at 18; Am. Compl. at p. 8 (Wherefore clause).  The court will award post-judgment interest on the unpaid duties and penalty pursuant to 28 U.S.C. § 1961; *see also United States v. Great Am. Ins. Co. of NY*, 738 F.3d 1320, 1325 (Fed. Cir. 2013) (explaining that 28 U.S.C. § 1961 applies to the USCIT through the operation of 28 U.S.C. § 1585). The court will also award costs pursuant to USCIT Rule 55(b).  *See* USCIT Rule 55(b) (requiring the court's entry of judgment to include costs against a defendant in default).

CONCLUSION

      For the foregoing reasons, the Government's motion for the entry of default judgment will be granted.  The court will enter judgment for the Government as against NYWL to include $379,665.83 in unpaid duties, a civil penalty in the amount of $3,760,000.00, post-judgment interest, and costs.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: April 16, 2021
       New York, New York